The next case called for oral argument is the Lavite v. Madison County Board I am outside counsel for the Madison County State's Attorney's Office and I am here to represent all of the county defendants, save the Sheriff, who is represented by Heidi Eckert. Are you going to split your time? I'll be taking the argument, Judge. This, of course, we're all aware of the facts. This is our third time up on appeal in this case. And this is more of an issue of law than an issue of fact to begin with, so I won't belabor all the factual history of this case. But it's the county's position that the trial court committed error by not granting the defendant's motion to dismiss, Count 3, and granting judgment on the pleadings. At issue in Count 3 was a mandamus action to secure payment of certain administrative expenses of the Madison County Veterans Assistance Commission. The whole point of the act is to provide financial aid to military veterans and their families. Section 2 of the act requires the county to annually appropriate funds specifically marked for direct financial aid to veterans and their families. In a separate section of the act, section 10, the act requires the county to additionally appropriate separate funding to the administrative expenses of the VAC necessary to administer the aid contemplated in section 2. However, as the act sets out in section 2, the ability of the VAC to seek mandamus as a remedy should the county fail to appropriate sufficient funds for aid, there's no inclusion in section 10 of the act of mandamus as a remedy for either the failure by the county to initially appropriate sufficient funds for administrative expenses or when the VAC exhausts the appropriated funds. Do you think that when the county refuses to pay a legal bill that's incurred because the county wrongfully excludes the superintendent of the VAC, that that's included within the term administrative funds? The legal expenses of the VAC are the legal expenses of the VAC. Is that part of the administrative funds? The legal expenses are part of the administrative expenses, yes. Okay, so now you're assigning a separate section of the act in your argument that has nothing with regard to mandamus. Mandamus includes the administration of the VAC. No, mandamus does not include the administration of the VAC. Mandamus is in section 2. Section 2 is the statute that says you have to appropriate sufficient funds for direct aid. Section 10 says the county additionally, as a separate appropriation, has to appropriate funds for the administrative expenses. That's the section where there is no language regarding mandamus as a remedy. So what would you have them do, conjunctively? They have options. What would you have them do? The options are, in this case, there is procedures available under the county code that the VAC can request a supplemental emergency appropriation for funds if they exceed their annual appropriation for their administrative funds. That's not my question. Okay. If there's money that's within the appropriation, whatever it is, what would you have the VAC do to get it if the county refuses to pay? Well, at an initial... What legal procedure, other than mandamus, do you think they ought to pursue? At an initial level, they would have to submit, they would have to comply with the act itself to submit the itemized invoices that are necessary to even validate the claim. We've got that. Okay. We've heard that Mr. Burkhart submitted invoices. You all didn't like them because they were, you know, blanked out. Right. Then you asked for revised ones, right? They had asked for the itemized invoices mandated by Section 9 of the statute. Correct, Your Honor. And who asked for that? I, off the top of my head, don't recall who asked for that. I think it was from either the administrator's office or the auditor's office. I think it was initiated by the auditor's office. It was initiated by the auditor's office claiming that they can't pay. I'm sorry, Justice Chapman. No, that's okay. Because of deletions and they can't see what's on the bill, right? And then part of your brief says, well, and then Mr. Burkhart violated the rules of professional responsibility because he was responding to that. No. So I don't want to go there yet. Okay. My question to you is, if you've got a bill and the bill satisfies the county requirements and there is no payment made, what legal procedure would you have them do other than mandamus? Injunctive relief? Mandatory injunction? Maybe. What? I haven't thought through that issue, Judge. Well, you're arguing that mandamus isn't proper. Because we do think that mandamus is proper. Okay, but how did they get paid? They submit an invoice that complies with the statute. Well, what if there's a disagreement? There's been no history. What if there is a disagreement as to the validity of whether they should be paid? How do they proceed? I'm assuming that they would bring it back through some form of injunctive relief or something along those lines. And what's the difference between mandamus and injunctive relief? Mandatory injunctive relief. Other than a statute. Legally, what's the difference? Not much. Thank you. Okay, that was accidental. I was reading. I had the briefs pulled up. Okay.  I'm sorry. Okay. So it's the. . . Let me go another place. Did you report Mr. Burkhart to the ARDC? There's been. . . I did not personally, but there has been. . . Has anybody? Yes. As a result? Yes. Really? Yeah. Do you believe that this Court can issue sanctions for frivolous appeals? For filing a frivolous appeal? Uh-huh. I have not looked into that, Judge. But I don't believe that this is a frivolous appeal. I didn't say it was. I'm just asking a question. Right. Okay. Go ahead. The. . . This is not a case where the county is attempting to impose its ordinances on the DAC. This is a case where the county is following state law as interpreted previously by the Will County Court. The Will County Court, on a mandamus action, had a similar issue regarding the interpretation of Section 9 in front of the Court. And the Court in that case held that. . . What district is Will County in? Will County is in the 3rd District. Are we bound by the 3rd District? No, but I think that the problem. . . one of the problems with. . . Are we bound by our own opinion in Levy? You are bound by your own opinion in Levy to the extent that that opinion relates to the claims still pending before this Court, which is only in regards to Count 3. And did the opinion in Levy direct payment of the attorney bills? The opinion in Levy 1 did not direct payment of the attorney expenses, no. The opinion in Levy 1, in Paragraph 47, which has been cited, states that once there's been appropriations, the county has no further ability to impose its ordinances on the selection of an attorney for the DAC. That's what the Court's opinion states. At no point in time since that has the county imposed its ordinances on the selection of an attorney for the DAC, nor have it interfered with its internal operations when it comes to that. What the county's done is said, look, here's Section 9 of the Military Veterans Assistance Act that says we have to receive these itemized invoices and we have to be able to audit them to do our job. So that's what's been done. In the Will County case, which, again, there's a handful, a small handful of cases that actually address the Military Veterans Assistance Act. The Will County case states that the rules and regulations provision of Section 9 authorizes the board to approve or disapprove VAC procedures pertaining to the oversight and distribution of money and supplies. That's what the county's doing. The county is saying submit the itemized invoices that Section 9 of the statute requires. We will exercise the oversight granted to us by that same section. Why does that section give you oversight? I mean, we went through that in Levite 1 where you wanted to go through special committee oversight. I thought we clearly said you didn't have the right to do that. And then we see it coming right back up again with the attorney fees. The portion of Levite 1 that deals with this was in regards to the county had a purchasing ordinance that dealt with submission of bills and you had to approve them within a certain dollar amount, as the court acknowledges. And there was another policy that dealt with selection of outside counsel, billing rates, things like that. The court at that point in time said you cannot impose these ordinances on the VAC, which the county from that point forward did not do. They said we understand, we've got it, move forward. But the county never said. Yeah, but in this case that's what they're saying. Now you've got to, isn't that what Mr. Fasson said? What? Now we've got to go back through these committees because you want more than you've got. Did I misunderstand that? Two issues there. Okay. One issue is the county's not saying our ordinances apply to this at all. There's no county ordinance that applies to government's context. The county is seeking to impose on the VAC. There are state statutes which do, however, apply. As we've argued, there's Section 9 of the Military Veterans Assistance Act, which requires itemized invoices be submitted to the auditor to review and approve, say, an issue payment. And when those itemized invoices have been submitted and there's funds available, they've always been paid. So the other issue that we're talking about, and I think that the Court is getting at, is there is a procedure available under the county code that if anybody, any department, runs through what the appropriated budget is for that department, they can seek supplemental emergency appropriations. There's a procedure and a state statute under the county code. I can't think of the citation off the top of my head, but it's provided for by the county code. It says that the department can come back and seek approval for the county board of a supplemental appropriation to fund those extra expenditures. That is what Mr. Fasten was referring to, and that's what the county is referring to. That's an option for the DAC to pursue so that the county can continue to exercise the at least budgeting input on this process that the statute clearly provides. Because of the fact that mandamus is not reflected in Section 10, I think it's clear that the legislature intended for there to be legislative input by the county board on further appropriations of those funds. Otherwise, they could have just as easily written mandamus in as a form of relief in Section 10. For whatever reason, the legislature didn't do that. Don't you think that we have to construe statutes so that they're consistent in their application? I mean, isn't that the law? I do, and I think that part of that involves also construing Section 9 in relation to Section 2 and Section 10. Yes. The trial court read our opinion in Levite to say that once the money had been approved and the bills submitted, that the county could no longer interfere in the payment. Is that how you understand the trial court's opinion? The trial court said that that's how they thought that the appellate court would rule on that issue. Yeah, I'm looking at it. Correct. That's exactly what the trial court said. And so you're arguing that you misunderstood our opinion or that the trial court misinterpreted our opinion because you're arguing that our opinion was incorrect? What are you arguing there? I'm arguing a few things, Judge. I'm arguing that in your initial opinion in Levite 1, you're holding as it relates to the payment of those administrative expenses. That section, if you look at the limited section of Levite 1 that actually deals with Count 3, which is the only count still before this court, that there's nothing in there that says the county's not to request itemized statements, which are allowed and mandated under Section 9 of the statute. Anything that wouldn't be attorney-client privilege. Right. When those prior invoices in the warrant for the VAC had been submitted, warrants 16-1, 2, and 3, they were heavily redacted. And you know what the county did? They paid them. They said, we've got funds on hand. We have to offer attorney-client privilege, and they paid those expenses. So, yes. And you bring up a very good point. I mean, isn't the VAC really, and I mean the tragedy in all of this is that money is being spent, obviously, that should be going to veterans. Right? Agreed. That's the real tragedy of all these appeals. But isn't it true that the VAC operates as kind of an independent entity? In other words, the county is approached with a budget. The county says, yea or nay, that budget includes veterans assistance, administration. You tax for that. You collect for that. We talked about that in Levite 1. And once that's done, why are you still, the county, why is the county still allowed to meddle? Isn't that really the subject of the veterans board, the executive committee that's put together? They review those bills, right? At least theoretically they review those bills. They make Mr. Levite the superintendent. What gives you the right to then go back in and say, well, we want to see this, we want to see that. What gives you that right? Section 9 of the Military Veterans Assistance Act specifically grants the county the authority to do just that, Your Honor. At what point in time? When the county receives a proper invoice submitted for payment. That's what Section 9 says of the act, that they are granted general oversight over the expenditure of all funds. And, in fact, that's, again, what the Royal County Court said was that they have the ability, the board, Section 9 authorizes the board to approve or disapprove VAC procedures pertaining to oversight and distribution of money. Procedures. The submission of an itemized invoice is a procedure. Procedures. What procedures are at issue here? What are you reviewing? What procedures are you reviewing? They're reviewing the invoices. You're reviewing the bills. Tell me what procedures you're reviewing. What procedures have you asked for to review? Well, they've asked for itemized statements. And then you report the lawyer for giving them to you. What's that? Then the lawyer gets reported for giving them to you? No. No. They've asked for itemized statements of their expenses. At no point in time has the county ever said to the VAC, we want to see anything that's attorney-crime privileged. That's fine. I practice municipal law. I understand that those legal bills are public documents and they're subject to production for a variety of reasons. But you can redact out attorney-client privileged information, which the VAC had done with all their warrants. That was never an issue underlying in this case. The issue is whether or not the county officers, like the auditor, can perform their statutory obligations to audit expenses. I don't see the word audit expenses in that statute you're describing. I don't see that. I see procedures. I agree with you on that. I don't see auditing expenses. Section 9 of the Act states that the VAC superintendent, the president, or chairman of the county board, or some other county officer appointed by him, shall have general oversight of the distribution of all monies and supplies appropriated by county for the benefit of military veterans and their families subject to such rules, regulations, administrative procedures, or audit reviews as are necessary as approved by the county board to carry out the spirit and intent of the Act. So the county is charged with ensuring that the veterans for whose benefit this aid is appropriated are that the money is actually being spent on the veterans. Now, Judge Becker used an analogy in a trial court. He said what if the VAC superintendent states that he's going to use the funds to go to an adult entertainment establishment. Right. He said it tongue-in-cheek. He didn't say it tongue-in-cheek. I think he proved his point. I think that's the bigger issue in the cases the court has hit on is at what point, there is no interpretation by the Supreme Court on this issue as to what the statute means and what the appropriate level of relationship between the parties is on this oversight. But certainly the legislature, when they adopted Section 9, intended for the county to have oversight because they specifically state that. And I would argue that if the VAC submits an invoice, say the VAC submits a warrant to the county and they say, guess what? We want to write a $2,000 check to Donald Trump for president. I think the county can say, you know, guess what? That's illegal. We're not going to pay this expense. And I would argue to this court that they have the ability to deny that expense. And if the VAC said, it's within our budget. This is within our budget. We think that this is an administrative expense because Donald Trump is going to be more sympathetic to our position on military veterans' issues. I still think the county can say, that may be all well and good, but we're not paying for something that we know to be an illegal expense. Under the court's ruling, arguably any expense that they submit for administrative expenses, number one, doesn't have to be itemized. So the county has no idea what the tax dollars are being spent on, but it can be used potentially for a variety of illegal purposes. The problem with that is that the county actually has separate statutory duties, specifically in the auditor's office, to ensure that that does not take place. Which is why the auditor's office has taken the position that they have.  Thank you, counsel. Counsel? Are you splitting your time? No, sir, Your Honor. I'll take care of it. I've explained to the Justices Cates and Chapman. She writes the brief. I do the oral arguments. Okay. All right. I get it all. The brief is a lot better than the oral arguments, too. We can work a lot of credit. In fact, I'm almost inclined to say, at this point in time, we have no further question and rest on the brief. But I do have a few points that I'd like to make in response to the arguments made by counsel today. Speak up with the train, Mr. Berger. I'll wait. Could we reflect the time? This is the train. I'll try to speak louder, too. No, that's okay. It was the train. Okay. Yeah. It's about past. All right. Here we go. I agree, and it's been my position from the beginning, that the VAC is intended to be independent and apolitical. You don't bring politics into whether or not we're – you don't ask a question when a veteran comes to the VAC office, are you Democrat or Republican or independent or Green Party or whatever. That is not – that is the intention of the VAC, to keep it out of politics. And, therefore, I'm somewhat offended that just toward the end of his arguments, counsel brings up a check to Donald Trump for so many thousands of dollars. I remind this Court of what Mr. Fasson said when they get into this thing. We have to go through the whole system again and approve it all again. I said, no. His quote from the meeting, the finance meeting, which gave rise to the petitions for rules to show cause for contempt, was, I'm not paying that bill, especially not this attorney. Well, I'm sure all of you know, I ran for judge and I had an artist in my name. But you know what? Things have happened since then. I don't like what either of the parties is doing, and especially not in this case. So, another point, they bring up the system of emergency appropriations. I think we talked about this before, but just to remind, maybe Justice Goldenhurst didn't hear it. This county board spent over $65,000 without an emergency appropriation. Now, they go back and fix it six months later, but what the heck is that? You know, I don't understand that. But in any event, there was no need for emergency appropriation, as suggested by counsel, in order to spend that $65,000. Why was there suddenly a need to be able to pay the balance of Warrant 16-4? Now, move forward to Levine 3. We're talking about Warrant 16-5. Because after Levine 1 came down, I submitted another warrant, which included the balance due on 16-4 and additional fees for the appeal and everything else that we had to go through, which came to about $96,000. And Treasurer Slusher testified at the hearing, I think it was in February or March, that he wasn't going to pay. He didn't pay it, and he wasn't going to pay it. Judge Becker did ask, well, if I order you to pay it, will you pay it? He said yes. Well, at that time, I told the judge, I said, I want you to order me to pay it, because all he has to do is walk across the street and write a check. I found out, walk across the atrium. Everyone knows how Massachusetts County Courthouse with the administration building here and the courthouse here. I said, just recess for 20 minutes, and I'll get paid. What else needs to be done here? The third issue is Section 9. I don't want to beat a dead horse, but I want to make sure. I'd like you to address Section 9, because that's the bulk of his argument. Well, and here's the deal. He keeps saying oversight's mandated by Section 9. When he gets it wrong, he says the itemization is mandated by Section 9. No, it's not. It specifically says that you have to pay when the invoice is, an itemized invoice is submitted, not to the county board, not to the auditor, not to any county officer, when it's submitted to the superintendent. That's the language of Section 9. And what the prior court, what Levine once said, I think is right on point. After they approve the annual amount, get your nose out, get the camel's nose out of the tent, sort of say, because, frankly, they shouldn't have anything to do. We say write the check. They should write the check if the money's in the treasury, and I think that's what our arguments in the brief say. So on Section 9, read that carefully. The itemization is due to the superintendent. It doesn't then say after the superintendent looks at it. And in this case, by the way, we have not only the superintendent look at it, but Mr. Levine's affidavit says, not only did I approve it, but I submitted it to the Executive Council of the VAC. They approved it. And then right after this incident with regard to, oh, we're not going to pay it, especially not for that attorney, it's like, you know what? The VAC, after reading that statement, sent a letter to Mr. Faddis and the county board saying pay it anyway, pay it anyway, and use any part of the $700,000 we have in reserve to meet expenses at the end of the year if you have to. If that's not a request, you know, first of all, you've got to understand who these people are at the VAC. They're all vets. They don't know the rules that the county board sets up. So they may or may not have known that they were supposed to get an EA or an appropriation. I don't think they were. And that gets back to one of my arguments I wanted to make clear. A lot of our arguments in the brief aren't about what should be. They're simply to show that even if you accepted the county's arguments on these issues, we still win anyway. What should be is the way we laid it out, and the way I think Justice Case lays it out with regard to the tax aid. First you approve the amount. Then you're supposed to extend the tax levy so that it covers that amount. You collect that fund and fine. The disconnect also with regard to that is that, and I think I touched on this in oral arguments in Levine too, is that you've got to come to the realization of how the tax levy works. They don't want us to spend fiscal year 17 what they approved fiscal year 17. Guess what? We don't have that money yet because fiscal year 17 is approved in November. The tax levy is approved the last Tuesday of December. Tax bills go out in the spring of 18. We don't get the money until July or August of 18. So in fact, and we covered this in our brief, we are always spending money from past tax years. That's just the way it works. So for them to suggest that we have the order limited in some way to whatever they appropriate in a given fiscal tax year is to ignore the reality that it hasn't been collected yet. We're spending money all the time of what we've been approved in the past and has already been collected. And they've consented and said there's over $700,000. It's been down now because it's been reduced, and that's the subject of the federal case with regard to the accountability. We want to know why our money went from $900,000 in 2009 down to about $500,000 now. So anyway, we found that. So I think I covered Section 9, unless there's additional questions with regard to that. And then I want to cover the point about the county's interpretation of the Levy 1 with regard to Section 2 and mandamus is not applicable to Section 10. I think I addressed it on page 19 of the brief. The bottom line is that that's kind of borne out of the water by Walter Gates. I'd like to ask you a question. How long have you represented the VAC? Mr. Leviti came to me when he was kicked out of his office. And I'm going to ask this of both councils, but I want to know if the Madison County Board specifically has authorized any rules, regulations, or administrative procedures or audit reviews specifically for the VAC to carry out its intended purposes that you're aware of. My answer would be no, but that's my understanding. I mean, have you seen any? No. Have they asked you to? No. In general, what happens is the VAC and the old administration, Joe Kearney, the county administrator, would submit what last year's budget line items were. And then Mr. Leviti would get together with the executive committee and say, well, this is what we want this year. And they would submit that, and it would either be approved or disapproved or changed or altered by the finance committee, which would then refer it to the county board. That's the extent of review, if you will, that I understood the county was doing. That's all they did. And generally speaking, that's it. There was only one year in which they did not award what the VAC asked for, and that was the 2017 year, I believe. And they award a little bit less than what the VAC asked for. The VAC asked for an increase in administrative expenses to, guess what, cover attorneys fees. And I want to ask you about an allegation that was in the briefs, and I didn't really understand it, but something about you trying to insert yourself into closed meetings or listening at the door with your ear or something like that. What was that about? Understand, this was after the election and the installment of a new administration. The finance committee substantially changed, and Lisa Campioli was the new chair of that finance committee. She asked me to attend a county board meeting, I believe it was in December, and she wanted to ask the county board to permit me to stay during the executive session they were going to institute in order to discuss their dealings with the VAC. I was in the back. I don't know if you know how a county board room is, but there's a vast area where it's an amphitheater, and there's a vast area where the county board members sit, and then there's like the state union where there's a big thing up top where visitors get to sit. I was up in that area. When they moved for executive session, Lisa Campioli stood as a board member and head of the finance committee and made the motion to see if I could stay, and she in fact signaled me to say, you know, hold on, don't leave yet. But they had not started anything yet, and I was waiting to see what the outcome of her request. She had told me she was going to make that request ahead of time. Once they said no, I left. I did not leave in handcuffs. There was no escort. What about this listening at the door? I have no idea what that's all about, Judge, and that didn't happen. I have no clues to what that was. Was any of that part of the allegation that you somehow violated the rules of professional conduct? No. My understanding of the allegation that I violated the rules of professional conduct is it's the county's position. I'm not allowed to talk to anyone on the county board or any county officer. And I at first took that to heart, and I said, well, you know, I know the rule that says you're not allowed to talk to anybody that's represented by counsel, but when I researched it, I found the ethical opinion that I cited to you. I think it's 13-9. I'm not sure of the number. It's in the brief, so I'll refer to the brief to get the number right. But it basically says, you know, the constitutional provision that allows you to seek to redress grievances with your public officials trumps the no contact with somebody who's represented by counsel. And that particular case they were studying was a tax case, and I believe the opinion, even though it's not like a ruling or anything, it's not by me, but it's an ethical opinion, which guides lawyers in their activities basically said to me, I can't even talk to anybody about anything other than settlement negotiations. I think that's what that opinion says. So that was my conclusion. So I was, in my opinion, I'm free to talk to anybody. Has that matter been resolved? Not to my knowledge. And I didn't want to say somebody has reported me to the ARDC in regard to this matter. It's news to me because I have not received a letter from the ARDC or any kind of inquiry. So that would be news to me if that happened. And I'm not saying I've never been reported to the ARDC. No, no, no. I don't want to ask that. I don't want to hear that. I was very curious because that's what I asked the opposing counsel. So you're saying that you have not been reported. No. Let me put it this way. Mr. Roscoff has not notified you of any, you've not gotten any letter. I've not gotten a notice from the. . . No letter. No. As of this date, no letter. No. Okay. I have not. Do you consider that a pretty serious allegation as an attorney licensed in Illinois, what they put in their brief? I do, Your Honor. I'll quote what I said last time when I got a little heated under the collar. And I'll say it again. If I did what the county and their lawyers did in this case, I'd fear that I'd lose my license. So, yeah, it's that serious. And that's why, frankly, the VAC needs your help. And they need guidance, firm guidance. Because I believe Levity 1 basically resolved the issues of what they're trying to revive here. And that's kind of fearful. And I don't know if, Justice Cage, you were going that way or whether you have the authority under the Supreme Court rules for a frivolous appeal. That does tell me back into the argument of the law of the case. In Levity 1, this court held, we recognize that the action enforced does not involve the appropriation of funds, Section 2, but there seems to be no distinction in the Act as to the ability of the superintendent to enforce the multitude of rights available to the Madison VAC under the Act, the entire Act. So this trying to mince out Section 2 from Section 10 and therefore mandating this doesn't apply to one or the other has already been ruled on. And it's the law of the case. And that gets into the whole thing of whether this is a frivolous appeal. But it also gets into the thing that I'm afraid of is that they made a conscientious decision not to file a petition for leave to appeal Levity 1. Everything that's already been done in Levity 1 should be the law of the case. My theory is whatever happens here in Levity 3, if you don't dismiss it because you don't have jurisdiction and rule on Levity 2 instead, they're going to file a petition for leave to appeal. And it's like, well, wait a minute. You've got two bites of the apple. So I kind of want to make it into my argument is if there's any way I could figure it out, but you certainly could, to go back to that and say, you know, you can't do that. You had your chance to do appeal in Levity 1. You didn't. So you're four holes from doing it now. I don't even know if you can do that or not. But it is a concern of mine, and it would only increase the cost to the VAC. I don't know. When I first got the briefs and I first did the briefs and I reread them, I said, you know, the first thing I should do is just get up there and say, are there any questions? Because questions would probably do better than me sitting up here. Obviously, you guys have certainly read the briefs and are fully familiar with what has been argued in the briefs. You know, the one other issue that I want to bring up, and that's my cross-appeal. The main issue of my cross-appeal is I disagree with Judge Becker's decision not to award mandates for future payments. I mean, he said something about he didn't think he was authorized to do that. And I think the Loyola case was cited in the V.E.1. But I'm sure that in that case, the Supreme Court applied mandamus to future payments under the, I think it was the Illinois Department of Revenue, was ordered to make payments of taxes to a certain entity. And mandamus was affirmed and it applied not only to those things that are due now, but to future payments because the law is clear. You're supposed to pay it as long as it's money in the treasury. And I've made those arguments all along. But don't you really think in that regard that there is some ability to review an itemized statement? I mean, how do we get around that language in the last line of Section 9? I don't think you need to get around that language because the language is clear. That review is limited to the superintendent and to the V.A.C. For you to create an ambiguity there, you'd have to take that language out of the statute limiting the review of the itemization to the superintendent. It doesn't say that the itemization is to be reviewed by the county board. It says to be reviewed by the superintendent. And also, you would also be inconsistent with the ruling of AB1. I think it was the ruling of Will County. We have a very strong difference of opinion as to what the ruling of Will County meant. I think the ruling of Will County said if we read Section 9 to mean everything that that county was talking it should mean, we'd basically be destroying the purpose of the act. I think that's what Will County really said. So they actually disagreed with the county's position and Section 9 authorized them oversight. But I'm sure this Court is capable of dealing with the Will County case. The only other thing I did here is I listed a timeline, but I'm sure the Court is fully aware of all the dates and everything like that. If not, they can refer to it in the brief. So unless the Court has other questions of me, I'd rely on everything else that's been filed with the brief. I don't believe so. Thank you, Counsel. Counsel? I want to ask you the same question I asked Mr. Burkhart. Are you aware of whether the Madison County Board itself has issued any rules, regulations, administrative procedures, or audit reviews that are necessary for approval of the BAC warrants? I'm not aware of any written policies along those lines, Your Honor. Are you aware of any written policies related to the BAC itself other than the statute? No, Your Honor. And then what about the last line that Mr. Burkhart was just saying, is that it does indicate that once the superintendent of the commission looks at it, it says no warrant authorized under this Act may be issued for the payment of money without the presentation of an itemized statement or chain approved by the superintendent of the commission. So the itemized warrant, at least according to that, says it has to be approved by the superintendent. There's a comma, and this is often in the case of the statute, there's a problematic comma. So what the statute says, again, is no warrant authorized under this Act may be issued for the payment of money without the presentation of an itemized statement or claim, comma, approved by the superintendent of the commission. What does the comma mean? The comma means that there has to be an itemized statement or claim submitted to the county for payment, which has been approved by the commission. Where does it say all of that? Submitted to the county for payment. Where does it say all that? No warrant, well, the whole part of the section deals with payment of expenses and contemplates a warrant being submitted by the BAC to the county to pay those expenses. And what this section says is no warrant can be issued for payment without an itemized statement submitted, which has been approved by the superintendent. I think the language could be a lot clearer. I hope that somebody in the legislature takes this issue up and redrafts the statute. The problem is we're dealing with a statute that goes back over 100 years to the original Bogartis Act, I think it was. It's the county's position that, and consistent with the county's position, prior to the submission of VAC Warrant 1640, the VAC had always submitted itemized statements to the county for approval. And what's the harm? That's the question. If we're saying that the VAC can redact out attorney-client privilege information, which the county's never asked for, what's the harm? What's the harm in having open government to where the expenses that the VAC seeks to have the county pay for its benefit are open? You know, there is no harm. That's not our determination, though. Is it our determination to create law and policy, or is it our determination to enforce the law? To interpret the statutes. Yeah, we don't make policy. We don't do what you would like us to do. I'm not asking the court to rewrite the statute. I'm just saying that this statute seems to suggest that the statements that are itemized get submitted to the county for payment. That's part of the warrant process. Now, I'm not going to speak for the court on this issue, so I want to make that very clear on the record. But when I see anyone in the legal profession say that someone has violated the rules of professional conduct, to me, as a lawyer, that's a very personal statement. And it better be right. Better be right. And I asked you whether or not, because your brief is full of it, whether you reported Mr. Burkhart to the ARDC, and he says he's not received such a letter. And your brief was filed months ago. Now, I want to know, were those allegations, now I'm asking as a justice. Sure. Were those allegations made frivolously? No, Your Honor. That you did not report him? Not at all. Or are you going to report him now as a result of these questions? Why wasn't he reported if you had the audacity to put all of that into your brief? Mr. Burkhart has been reported to the ARDC over the issues that arose out of the Leviti case. And that's your statement before this court? Yes, Your Honor. Okay. Thank you. Yes, you're welcome. And there are. The ISD opinion that Mr. Burkhart references doesn't hold what he says it holds. How long ago was Mr. Burkhart reported? Do you know? I believe it was some time. I'm sorry? I believe it was some time ago. And do you know who reported him? I do. Who? I believe it was the state's attorney. So Mr. Gibbons? Yes. Not you? Correct. Do you have an obligation to report him? Not once he's already been reported for the same issues. Now, I don't think that 50 people have to report somebody for the same thing. Is that? It was the state's attorney. I'm sorry, could you repeat that? It was the state's attorney. I don't like to get out of the business. Okay. I'm just answering questions at this point, so. Okay. Perfect. I think your time is up. Okay. Thank you. Thank you, counsel. Okay. We appreciate the briefs and arguments of counsel. We're going to take the case under advisement and issue a ruling in due course. We're going to take a short recess and then resume oral. So I.